NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHARITY ISLES, *Plaintiff/Appellant*,

*v.*

COLLEGE NANNIES & TUTORS LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0637
FILED 1-12-2021

Appeal from the Superior Court in Maricopa County
No. CV 2018-090932
The Honorable Tracey Westerhausen, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

APPEARANCES

Charity Isles, Phoenix
*Plaintiff/Appellant*

Jones, Skelton & Hochuli PLC, Phoenix
By Michael A. Ludwig, Andrew I. Clark, Alejandro Barrientos
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1        Charity Isles appeals from the superior court's order granting summary judgment in favor of College Nannies & Tutors, LLC ("College Nannies") and its employee, Kathleen Connely.  Because genuine disputes of material fact exist relating to Isles's claim that College Nannies breached its written contract, we vacate that portion of the court's order.  We also vacate the court's denial of Isles's motion for reconsideration, but we affirm the remainder of the court's judgment, including the dismissal of all claims alleged against Connely.  We remand for further proceedings consistent with this decision.

## BACKGROUND

¶2        Isles contracted with College Nannies for nanny services to take care of her two children.  Isles agreed to pay a one-time fee plus an hourly rate for the nanny.  In return, College Nannies would "identify, screen and place a <u>suitable</u> nanny," who would engage in "role modeling behavior."  According to Isles, the parties also verbally agreed to various stipulations.  Although several nannies were assigned to work in Isles's home ("Home"), this litigation involves only Connely's actions.

¶3        Isles's mother-in-law, Lorraine Isles, also lived in the Home. Isles instructed Connely that Lorraine was not to be alone with the younger child or feed him because Lorraine had Alzheimer's and Isles did not trust her with the child.

¶4        While Connely was working as a nanny in the Home, Lorraine disclosed to Connely that she was being abused and that Isles was preventing her from contacting other family members.  On two occasions, Lorraine used Connely's phone to call Michelle, who is Lorraine's daughter. Connely also started communicating with Michelle.  At one point Lorraine asked Connely to mail several pages of documents from the Home to Michelle.  Eventually, the suspected abuse was reported to Adult Protective Services and law enforcement.

¶5        Isles and her husband (not a party to this appeal) filed a complaint in superior court against College Nannies and Connely for breach of contract, and the torts of intrusion upon seclusion and defamation. Isles later filed an amended complaint, adding a claim for false light. She later filed a second amended complaint, adding breach of the covenant of good faith and fair dealing but removing her defamation claim.

¶6        College Nannies and Connely sought summary judgment on Isles's claims for intrusion upon seclusion, defamation, and breach of contract. The superior court granted the motion. Isles filed a motion for reconsideration. In a separate filing, she requested spoliation sanctions, asserting that Connely had deleted text messages that were relevant to the litigation. After the court denied the motion for reconsideration, it issued a signed order, under Arizona Rule of Civil Procedure ("Rule") 54(b), granting the motion for summary judgment. The next day, the court filed an unsigned minute entry denying Isles's motion for spoliation sanctions. Isles then filed a timely notice of appeal from the Rule 54(b) order.

¶7        College Nannies later filed another motion for summary judgment relating to Isles's claims for breach of the implied covenant of good faith and fair dealing and false light. The superior court granted summary judgment as to those claims, reciting that under Rule 54(c), there were no further matters pending. Isles did not appeal the Rule 54(c) judgment.

**DISCUSSION**

¶8        Summary judgment is proper when "there is no genuine dispute of any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(a). We review the superior court's grant of summary judgment de novo, viewing the evidence and reasonable inferences in the light most favorable to the non-moving party. *Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11 (2011). And the interpretation of a contract is a question of law that we review de novo. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593 ¶ 9 (App. 2009). We will affirm the superior court's disposition if it is correct for any reason. *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

¶9        The superior court granted summary judgment in favor of College Nannies on Isles's claims for intrusion upon seclusion, defamation, and breach of contract. Isles argues issues of material fact exist on her breach of contract claim relating to College Nannies. She does not challenge the court's ruling that summary judgment was proper on her contract claim against Connely, or her claims against both defendants for the intrusion

upon seclusion and defamation claims. We therefore address only whether summary judgment on the breach of contract claim against College Nannies was appropriate. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (noting that a party's failure to present significant arguments on a particular issue may constitute abandonment and waiver of that issue).

¶10        As pertinent here, to support her claim for breach of contract Isles had to establish that (1) College Nannies breached one or more written or verbal contractual provisions, and (2) she suffered damages as a result of the breach. *See Graham v. Asbury*, 112 Ariz. 184, 185 (1975) (identifying the elements of a claim for breach of contract). Whether a breach has occurred is ordinarily a factual question to be resolved by a jury. *See Fehribach v. Smith*, 200 Ariz. 69, 73, ¶ 16 (App. 2001).

¶11        The written contract provided that College Nannies would find and place a "suitable" nanny with the family for a one-time fee, and that Isles would pay an hourly rate for the time each nanny spent in the Home caring for the children. Specifically, the contract stated that Isles "desire[d] to engage College Nannies to place a nanny for general childcare/nanny services, role modeling, light housekeeping, simple meal preparation, and other pre-arranged services specified by Parent and agreed upon by College Nannies." In the superior court, Isles contended that College Nannies breached the contract by failing to provide a suitable nanny who engaged in role-modeling behavior. College Nannies countered that Isles failed to provide any evidence that Connely was unsuitable. The superior court found in part that because Isles did not allege that Connely was not suitable or a good role model *at the time of placement*, College Nannies was entitled to summary judgment.

¶12        "The purpose of contract interpretation is to determine the parties' intent and enforce that intent." *Grosvenor Holdings,* 222 Ariz. at 593, ¶ 9. In making that determination, we first look to the plain meaning of the words. *See United Cal. Bank v. Prudential Ins. Co.,* 140 Ariz. 238, 259 (App. 1983). When the terms of a contract are plain and unambiguous, its interpretation is a question of law for the court. *Chandler Med. Bldg. Partners v. Chandler Dental Grp.,* 175 Ariz. 273, 277 (App. 1993).

¶13        We disagree with the superior court's conclusion that the contract only required a suitable nanny who provided role modeling *at placement*. That reading is too narrow because it is not supported by the contract's plain language. And it is unreasonable to conclude that the nannies assigned to provide services to Isles would need to be suitable, and provide role-modeling behavior, only when the assignment began. Rather,

the nannies assigned to work in the Home were employees of College Nannies and therefore obligated to perform services consistent with the contract's requirements whenever they were working there.

¶14 In its motion for summary judgment, College Nannies argued Isles failed to provide any evidence of a breach of contract. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶ 14 (a party seeking summary judgment must provide evidence showing the absence of a genuine issue of material fact and "explain why summary judgment should be entered in its favor").

¶15 In response, Isles asserted that a suitable nanny would not (1) make disparaging remarks about Isles and her husband to other family members, (2) "sow discord within [the] family," (3) disclose information to others, (4) interact with Lorraine and Michelle, or (5) disobey instructions. In support of her argument, Isles provided text messages between Connely and Michelle. The messages included Connely referring to Isles as "despicable" and telling Michelle that since Isles was not "being considerate enough," Michelle could call the police to perform a welfare check and it "might make an impression on [Isles]." Texts also confirmed that Connely had obtained documents from the Home and mailed them to Michelle. Even after Connely was instructed not to speak to Michelle, she continued to speak to her, asked for a picture of Michelle and Loraine, and even accompanied them to a restaurant. Whether those actions constitute a breach of the written contract—requiring College Nannies provide a suitable nanny who exhibits role modeling behavior—presents genuine disputes of material facts.

¶16 College Nannies also argued Isles failed to provide any evidence she suffered damages due to the alleged contractual breach. The superior court agreed, finding Isles failed to provide a dollar amount for her damages. The record shows otherwise. Isles provided an affidavit stating she paid $2,735.33 to College Nannies and included a chart showing the amounts paid for the work of each nanny, including Connely. Isles also stated she paid $772.65 to a private investigator to investigate Connely. And the contract itself says that Isles agreed to pay $395 to College Nannies as a placement fee. Isles provided sufficient evidence to support the damages element of her claim that College Nannies breached the written contract, and the court erred in granting summary judgment on that basis.

¶17 Isles also claimed she made various verbal agreements with College Nannies in addition to the written contract. For purposes of the summary judgment motion, College Nannies did not dispute it agreed to

the following: the assigned nanny would not (1) allow Lorraine to feed, hold, or carry Isles's younger child; (2) allow Lorraine to change the child's diaper; or (3) leave the child unattended or alone with Lorraine. Isles, however, failed to show she was harmed because of Connely's failure to comply with these verbal agreements. In an action for breach of contract, the burden is on the plaintiff to prove damages "with reasonable certainty." *Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963). Isles failed to meet that burden and thus summary judgment was proper.

**¶18**         Isles also challenges the superior court's denial of her motion for reconsideration. In her motion, Isles relied in part on (1) new evidence showing Connely deleted text messages that were not previously discoverable, and (2) a new expert opinion affidavit opining that College Nannies's duties under the contract included more than mere placement of a nanny. Although we express no opinion as to the admissibility of such evidence on remand, because we are vacating the court's order granting summary judgment on Isles's claim for breach of the written contract, we also vacate the court's order denying her motion for reconsideration.

**¶19**         Isles argues the court erred by not sanctioning College Nannies for its alleged failure to attend and meaningfully participate in a settlement conference. But Isles failed to raise this issue to the superior court so we will not address it on appeal. *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) (appellate courts generally do not consider issues raised for the first time on appeal).

**¶20**         Finally, Isles contends the superior court erred by denying her motion for spoliation sanctions against College Nannies for Connely's alleged deletion of text messages. While neither party addressed jurisdiction, we have an independent duty to determine whether we have jurisdiction to consider the various rulings of the superior court. *See Fields v. Oates*, 230 Ariz. 411, 413, ¶ 7 (App. 2012). The minute entry denying Isles's motion was not appealable because it was not signed; instead, it became appealable when the court entered its final judgment under Rule 54(c). *See McCleary v. Tripodi*, 243 Ariz. 197, 199, ¶ 7 (App. 2017) (explaining that generally, a judgment is not final unless it is signed, and the court recites under Rule 54(c) that no further matters remain pending). Because Isles did not file a notice of appeal from that final judgment, we lack jurisdiction to review whether the court erred in denying the motion for spoliation sanctions.

## CONCLUSION

¶21        We vacate (1) the portion of the superior court's order granting summary judgment in favor of College Nannies on Isles's breach of written contract claim, and (2) the order denying her motion for reconsideration. We affirm the remainder of the judgment. The case is remanded for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA